**Daniel K. BURRY and Sara Burry**
v.
**NATIONAL TRAILER CONVOY, INC.**
**Civ. A. No. 4508.**

United States District Court
E. D. Tennessee, N. D.
April 17, 1963.

R. T. Mann, Privette & Mann, Knoxville, Tenn., for plaintiffs.

Joseph A. McAfee, Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., Floyd L. Rheam, Rheam & Noss, Tulsa, Okl., for defendant.

ROBERT L. TAYLOR, District Judge.

Daniel K. Burry and Sara Burry instituted an action for wages allegedly due to them under the Fair Labor Standards Act.

Jurisdiction of this Court is derived from Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), and Title 28, Section 1337.

Mr. Burry started to work for the defendant as terminal manager in 1956 in Knoxville. He entered into a written contract with the defendant which was to commence on the 1st day of November, 1960. This contract contains some twenty-three separate paragraphs and sets forth in detail the terms under which he was to operate the Knoxville terminal. Mr. Burry's services were terminated on December 3, 1961, and the statute of limitations precludes him from recovering any amount prior to July 16, 1960.

It was understood by both parties that Mr. Burry was to operate a truck in the transportation of mobile homes for the defendant in connection with the operation of the Knoxville terminal and that he would necessarily be away from that terminal while he was making hauls of mobile homes over the roads out of Knoxville.

Mr. Burry claims that he was not paid the minimum wage of a $1.00 an hour for the first 40 hours and $1.15 per hour during the period of time those rates applied under the Fair Labor Standards Act. He claims that he worked during the critical period involved in this lawsuit on an average of fourteen hours per day during the week days and six hours on each Sunday when he was in Knoxville. He claims that he worked 90 hours per week during this period of time for a portion of which he has not been paid as required by the Fair Labor Standards Act.

Mr. Burry claims that the written contract entered into by him and the company was a device used by the company to avoid payment of wages to him in accordance with the Fair Labor Standards Act.

Mrs. Sara Burry claims that she was an employee of the defendant during this period and that she worked 90 hours a week during the absence of her husband from the City of Knoxville and for which she has not been paid anything by the defendant.

In response to those contentions of plaintiffs, the defendant denies liability either to Mr. Burry or Mrs. Burry. Defendant says that the contract shows Mr. Burry was to receive commissions at the rate of one cent per mile for primary transportation of mobile homes—which means from the factory to the distributor—and two cents per mile for secondary transportation—which means from the distributor to the seller or any other subsequent hauls; that Burry was paid in accordance with those rates; that the contract provides, among other things, that he was either to be paid on a com-

mission or an hourly basis, whichever was greater, and that if his commissions were greater than the amount earned on an hourly basis he was to be paid on the commission basis less the expenses which he had incurred in the operation of the business in the form of telephone bills and possibly other items which the company, under its agreement with him, had a right to deduct.

Defendant says Burry was paid on a monthly basis.

With respect to the claim of Mrs. Burry, the defendant states that she was not its employee and that if she worked, which is denied, she was employed by her husband and he is responsible for any wages she may have earned; and that it did not suffer or permit her to work within the meaning of the Fair Labor Standards Act.

Defendant says that it did not know that she was claiming to work for it, and that the written contract provides that if and when Mr. Burry employed any additional help, such help would be considered his employee rather than that of the company.

Other defenses raised by the defendant are estoppel based on monthly reports made by Mr. Burry to the company setting forth the amount of time he worked during that month. These reports are filed as Exhibit No. 3 in the record and purport to show the time spent in preparing freight bills, paying drivers, relaying trailers, checking leased equipment, routine office work, leasing drivers, soliciting business and miscellaneous work.

Defendant contends that it directed Mr. Burry to state accurately on these reports the amount of time he worked during the particular week and the character of his work as classified in the form. As an additional defense, defendant relies specifically upon each and every paragraph of the contract.

Defendant says that the district office under which Knoxville falls is located at Thomson, Georgia, that it had no one in Knoxville at the time involved in the

suit as a representative except Mr. Burry and the defendant relied upon his records as representing the exact amount of time he worked.

Certain principles relating to the wage and hour law with which this Court is in accord are outlined in the thorough brief presented by the attorney for the defendant. The Court will briefly mention some of them.

First, an employer and employee are free to make any agreement they desire provided that the agreement provides for compensation at least as great as the minimum wage fixed by the Act. Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.

Second, parties are free to contract even though the employer declares that if the employee does not sign the written contract his work will be terminated, provided again the contract meets the minimum payment requirement of the Act. Atlantic Company v. Walling, 5 Cir., 131 F.2d 518.

Third, plaintiff has the burden of proof in each case of proving with reasonable certainty that he or she worked more than the maximum hours in any week and that he or she has not been paid the minimum wage; that such work was performed with the knowledge of the employer or performed under such circumstances that the law would supply knowledge and if the commission received by the employee did not equal or exceed the minimum wage, plaintiff would have the burden to show the amount of commission received and that it was less than the minimum wage. Fox v. Summit King Mines, (C.A.9) 143 F.2d 926.

Fourth, defendant had the right to contract that plaintiff would notify it if he was working overtime or expected to work overtime, and that he obtain permission from defendant before continuing the practice. 56 C.J.S. Master and Servant Section 151, page 701.

Fifth, an employer may, under the Act, employ a person on a commission basis. 29 U.S.C.A.App. §§ 776.5 and 778.3(b).

Sixth, that if an employee is keeping his own time sheets secretly and does not notify his employer that he is keeping such sheets and keeps them for the purpose of committing a fraud on the employer or to trick the employer in paying him overtime wages, he is precluded from recovering overtime wages under such circumstances. No person should ever be permitted to profit from his own fraud.

The principles announced are fairly well established in the decisions that have arisen under the Fair Labor Standards Act, but the application of these principles to the present case is not as easy as their statement.

The issues that were formulated in the pre-trial order in this case are:

(1) Was Mr. Daniel K. Burry an independent contractor or an employee during the period of time referred to in the complaint. The contract between Mr. Burry and the defendant contains many restrictions on the work of Mr. Burry. It refers to him as agent of the defendant. Some of the witnesses in this case have referred to him throughout their testimony as the terminal agent of the defendant. The defendant had the right to hire or fire him; it had the right to control his means of operation, and it is the opinion of the Court, and the Court finds as a fact, that during the period of time involved in this lawsuit Burry was an agent of the defendant and not an independent contractor.

(2) If not paid the minimum wages as required by the Act, what amount is the defendant indebted to him? (It appears that Burry signed some papers furnished to him by the defendant on which he listed the number of hours he worked for the defendant each week and the character of the work performed during that week. If it appears that such papers were not used by the defendant as a device to evade the minimum wage standard provided for in the Act,

is Mr. Burry bound by these statements furnished the defendant purporting to contain the hours which he worked?)

The Court finds that Mr. Burry was not paid the minimum wages as required by the Act. The wages paid him during the period of time are set forth on Exhibit No. 28. In July, 1960, the first month that is involved here, Burry received a net amount of $41.89. During the week of July 18, 1960, he worked 41 hours overtime. He is entitled to straight rate for the first 40 hours and time-and-a-half for the next 41 hours. The company is entitled to a credit of the net amount paid to him during this period.

The Court will declare general principles from which a judgment will be formulated without going into each item shown on Exhibit No. 28 and on Exhibit No. 22, but in the preparation of the judgment the pattern will be followed which has been applied to the month of July, 1960 and shown on Exhibit No. 28 and Exhibit No. 2.

The Court finds that the hours worked by Mr. Burry during the period of time involved in the suit is less than 14 hours a day. The Court finds that the defendant should be entitled to credit for each three-hour day worked by him. The Court reaches this conclusion in this way.

Mrs. Burry testified that they started to work at 8:00 a. m. on week days and worked until 9:00 or 10:00 at night. The Court is fixing 9:00 p. m., as the quitting time, having in mind the rule that the burden is upon plaintiffs to show with reasonable certainty the amount of time worked.

The Court is allowing the company a credit of one hour lunch time and one hour at dinner time, so that Mr. Burry will be paid on a basis of 11 hours per day during the week and five hours a day on Sunday, or 71 hours per week.

This is the pattern to be followed in working out the mathematics in this problem.

The Court finds that Mr. Burry is not bound by the figures contained in the various reports which he sent into the company as per the written agreement for at least two reasons.

In the first place, these reports cannot deprive Mr. Burry of minimum compensation given to him by the Act unless he is estopped to claim more than the time which he set forth in the forms. We do not believe that he is estopped for the reason that the evidence is reasonably clear that Mr. Humburg, who presented the contract to him, stated in substance, or led him to believe from what he said, that if the hours stated on the reports exceeded the commission earned, the Knoxville terminal would be closed down. At that time plaintiff asked that he be placed on an eight-hour day, and Mr. Humburg either stated or led him to believe that this could not be done, telling him, in substance, that the contract had been worked out in accordance with the wage and hour law and in accordance with the Oklahoma law.

Secondly, we think that these reports are sufficient on their face to bring knowledge to the company the amount of time stated on them was not accurate. There is testimony to the effect that Mr. Burry complained to Mr. Privitt in 1961 about his long hours at work and Mr. Privitt replied, in substance, that his hours should be shown on the reports. Mr. Burry stated that Mr. Privitt told him that this should be done gradually. The reports for the next two months show that he did work during those months of over 100 hours per week. Soon after receipt of the second report, Mr. Burry's work was terminated.

Prior to November 1, Mr. Burry worked under oral agreement which was substantially the same as the written agreement. Mr. Humburg likewise told him that he could only claim five hours a week to solicit business. That is set forth in Form 182.

The proof shows that the area for soliciting business included upper East

Tennessee as far as Johnson City, which is about 107 miles from Knoxville, and Kingsport, which is less mileage, and that Burry visited these towns to solicit business.

 The Court will take judicial notice that Burry could not solicit business in Johnson City if he traveled by motor vehicle in a period of five hours per week. The round trip traveling time to Johnson City from Knoxville would alone require at least five hours.

There is testimony that there are about 30 trailer parks in the Knoxville area having on an average of 60 trailers to each park.

Mr. Burry testified he was away from his office on company business on an average of four hours a day. Mr. Burry and his wife testified unequivocally that their phone was available for calls from customers, the phone being located in their home which was likewise a trailer, and that one of them worked regularly from 8:00 a. m., to 10:00 p. m. during the week, and on Sundays from 8:00 a. m., to 2:00 p. m. They stated that they received on an average of 10 to 20 phone calls a day, and on some days as high as 40 calls. His telephone bills for the calendar year 1960 incurred in the operation of the business was $891.-70, for 1961, $962.12. Mr. Burry testified that Mr. James told him that the phone had to be covered at all times or he would not have a job.

Mr. James' testimony on that point was more or less negative. He said he stated in substance that his instructions were that the operators were only to keep their terminals open at reasonable hours and that he had no recollection of stating to Mr. Burry that it would be necessary for him to keep the Knoxville terminal open at all times.

Mr. Abla of the company came to Knoxville in October or November, 1961, and told Mr. Burry that he was not visiting a sufficient number of trailer parks. Mr. Abla stayed about four or five hours and they visited trailer parks but Mr. Burry did not even report those calls on his weekly report. The following day they visited three more parks and this took about five hours which Mr. Burry did not report.

Mr. Burry testified before the Utilities Commission in Nashville at the request of Mr. Privitt, which work was not reported on the form sheet. Mr. Burry stated that he told Mr. Privitt about working 90 hours a week.

Mr. Robinson, a contract hauler, testified in substance that from June, 1959 to August, 1961, he visited the Knoxville terminal many times, that he usually visited it around 7:00 p. m., and sometimes found neither Mr. Burry nor Mrs. Burry. He would return the following night and usually found them there. He stated that Mr. Burry told him that he turned his phone down and for him not to call him before 10:00 a. m., or after 10:00 p. m.

Mr. Connatser's testimony was just exactly opposite from that of Mr. Robinson, in that he stated that he was employed by defendant from October 13, 1957 to January, 1962 and that he always found Mr. Burry or Mrs. Burry at the Knoxville terminal; that he had gone to the office as early as 6:00 a. m. and as late at 8:00 p. m. He went to the office on an average of once a week to pick up freight bills, and testified that Mrs. Burry drew one draft to him in payment of a freight bill, that she made out many freight bills covering his haulings, that he contacted Mrs. Burry when Mr. Burry was away from the office.

Mrs. Burry's testimony corroborated the testimony of her husband on the material points involved in the lawsuit.

Mrs. Vera Rhea worked for the Pettit Trading Post which adjoined the Knoxville terminal, and she sent customers to Mr. Burry practically every day, on an average of two or three customers per day. She had many people asking about the Burrys and she directed them to their place of business. She talked to Mrs. Burry many times about this, and there was always someone at the office when

she called. She did not make any calls on Sunday.

The pre-trial discovery deposition of Mr. Rainwater indicates that it is a practice of secondary terminal operators to have their office in their homes and that this practice is to the mutual advantage of the employee and the employer. There are about 133 terminal offices in the United States operated by the defendant and many of these terminals are operated by women. He did not know what the proper hours were for the Knoxville office. His company expected the office to render service as needed by the public. He did not expect the office to be open on Sunday. He did not expect the manager to work more than 40 hours per week.

Mr. Radford hauls trailers for the defendant. He has hauled many of them at the request of Mr. Burry. He stated in substance that Mr. Burry told him not to call before 9:00 or 10:00 a. m. This Mr. Burry denied. Radford stated that he never gave Mr. Burry authority to endorse his name on the draft which was filed as Exhibit No. 9, and he cannot be positive whether he received the money on this draft but he does not remember having received it. The amount involved is around $52.50.

Wayne Thompson, who is the supervisor of the defendant at Elkhart, Indiana, stated that he talked to Burry in Elkhart, Indiana the latter part of 1960 and 1961, and on one or both of those occasions Mr. Burry told him about the hours he was keeping. He said they were around noon until late evening, and that due to the large number of calls in the evenings he was changing the hours so he could sleep in the morning. Mr. Thompson now lives at Tulsa and is supervisor of the terminals for the defendant.

Mr. Privitt works in the traffic department of the defendant. He assists Mr. Thee. He stated he had no right to hire or fire employees of the defendant. He directs the employees in their work. He talked with Mr. Burry on May 17, 1961. At that time there was a petition to remove Mr. Burry as terminal manager filed by certain people in the Knoxville area. He investigated the charges in the petition and reported to Mr. Thee. Mr. Burry told him that the petition arose out of complaint of "wildcatters" with which he had business clashes. He was with Burry on September 19, 1961 at Nashville when Burry testified before the Utilities Commission at his instance.

Mrs. Huff was present during all the conversation Mr. Privitt had with him, and heard Mr. Burry tell him he was working hard and putting in extra hours. Mrs. Huff testified she said to Burry if that is true why is it that her drivers could not get him until late. This Mr. Burry denied.

Mr. Privitt referred him to Mr. Rainwater about the extra hours that he was working. Mr. Privitt denies telling Mr. Burry to increase his hours on the report to eight hours per day but do it gradually. He said he told him that he was in the terminal department and had nothing to do with the number of hours worked, as that was a matter for Mr. Rainwater.

Mr. Bruce is the secretary-treasurer of the defendant. He filed a signature card of Mr. Burry which was an authorization for Mr. Burry to sign drafts on the defendant. He testified Mrs. Burry did not have a signature card. Mrs. Burry testified positively that her signature card was sent to the company in Tulsa at the same time her husband's was sent. Mr. Bruce stated that Mrs. Burry did not have authority to sign drafts. He checked all drafts in his office but did not find any with her signature on it.

Mr. Carl James now works for Raymond Producers in Michigan. He is a former employee of the defendant and was formerly southeastern supervisor for the defendant. Mr. Burry contacted him in 1956 for employment and filed an application at that time. He first saw Burry about May or April, 1956 in Georgia. Burry wanted to come to Knoxville and he talked to him at Thomson, Georgia, and James came to Knoxville and talked to Burry subsequently. At that

time the company was inaugurating secondary terminals. Mr. James told him that if he, Burry, was going to operate the Knoxville terminal he would have to have someone at the office while he was away and that he could use his wife, but Mr. James testified that he did not tell Mr. Burry, as claimed by Burry, that he could use his wife while he was away from the terminal.

Mr. Humburg was the direct supervisor for the defendant and has worked at that position for about three and a half years. He was formerly an Indiana State Police officer for about ten years. He contacted Mr. Burry on October 6, 1960 about signing the contract. He stated in substance that he went over the contract carefully with him and that they discussed each item. He stated that he told Burry to list each item of work performed on his reports to the company. He stated that Burry asked him why he couldn't put down eight hours work, and he told him that that was not to be done but that he must keep the report of the actual time and in each operation and suggested that he put down his work on a scratch pad when and as performed. He told him that five hours a week would be the time allowed for soliciting business but if he wanted to spend more time he would have to contact Tulsa and get consent.

Mr. Rainwater, Executive Vice President and Active Manager of the defendant since 1956, testified about the number of terminals operated by his company and about the agency agreement respecting secondary terminals. The substance of his testimony was that he expected all of his terminal employees to make weekly reports and state accurately on the reports the amount of time worked; that he did not know that Mr. Burry was working more than the minimum amount of 40 hours per week. He also testified about getting clearance of the contract through the wage and hour division at the Dallas office with which this company dealt on such matters. He had no knowledge that drafts were being signed by Mrs. Burry.

The foregoing is a thumb nail summary of the testimony of the witnesses who testified in the case with the exception of that of Mrs. Burry, and this brings us to the final issue in the case as set forth in the pre-trial order; namely, was Mrs. Burry an employee of the defendant within the period of time alleged in the complaint, if so, is the defendant indebted to her in any amount; and if so indebted, the amount.

The dealings of the defendant with the United States Department of Labor Office in Dallas and the letter from Harry Campbell, Jr., Deputy Regional Attorney, dated September 1, 1960, to Mr. Floyd L. Rheam, attorney for the defendant, Tulsa, Oklahoma, throws some light on this question.

Paragraph two of this letter reads, in part:

"In paragraph three of the agreement we find the sentence 'It is agreed that as between the corporation and the agent said (additional) personnel will be considered as the employee of the agent.' This is, of course, entirely proper insofar as the agreement between the corporation and the agent is concerned. However, I feel it incumbent to point out that this agreement cannot change the legal situation or the responsibilities of the corporation under the Fair Labor Standards Act. Since the agent is an employee of the corporation, it would be the position of the Department that the additional personnel would also be employed by the corporation. It would, therefore, be incumbent upon the corporation to make sure that such additional personnel were compensated in accordance with the Fair Labor Standards Act, that is that they receive not less than the minimum wage and any overtime earned, and that the required record of hours of work, etc., be maintained. This is a matter which I am sure you can handle through proper instruc-

tions in the manual of operations in the few instances, as I understand it from Mr. Rainwater, that additional personnel would be required."

The term "employed" as used in the Fair Labor Standards Act includes those whom the employer suffers or permits to work. 29 U.S.C. § 203. This means that if a person, and if the employer permits another to work for him or the employer's agent, although the employer has not expressly hired or employed but permits him to work, he is the employee within the meaning of the wage and hour law. Neal v. Braughton, 111 F.Supp. 775.

If the employer has no knowledge that the employer agent has employed another person, then the person employed is not an employee within the meaning of the wage and hour law. Barras v. Salt River Valley Water Users' Association, 249 F. 2d 952 (C.A.9); Mitchell v. Strickland Transportation Co., 228 F.2d 124 (C.A. 5); National Trailer Convoy, Inc. v. Employment Security Agency of Idaho, 83 Idaho 247, 360 P.2d 994, deal with the same questions. Also Mitchell v. John R. Cowley & Bros. Inc., 292 F.2d 105 (C.A.5); Goldberg v. Warren Bros. Roads Co., 207 F.Supp. 99 (D.C.Me.); United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Goldberg v. Whitaker House Cooperative, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100; Eakins v. Alvarado Broadcasting Co., 125 F. Supp. 87 (D.C.N.Mex.).

On the question of the burden of proof being upon the employee, we cite the case of Handler v. Thrasher, 191 F.2d 120 (C.A.10), an opinion by Chief Judge Murrah.

That brings us to the question whether the defendant had knowledge Mrs. Burry was working at this office.

The Court does not have the slightest doubt that the circumstances were such as to bring to the knowledge of the company that she was working at that terminal. At the very outset of the negotiations between her husband and this company, she was invited to Georgia to take a training course in managerial duties of a secondary terminal manager. She spent two and a half days and two nights at that place going to school, so to speak, to learn how to operate this business. Moreover, it is the custom of this company to use the wives of husbands who are terminal managers to work in the absence of the manager.

The company knew that Mr. Burry had to be out of the office periodically operating his tractor to pull mobile homes from one place to another. The company did not expect the terminal office in Knoxville to be closed during those periods. No one has indicated otherwise in the testimony during the three day trial, or in the depositions given in the home office at Tulsa. The natural inference and the only reasonable inference that can be drawn from the facts in this case is that the company expected Mrs. Burry to work in this office. This conclusion is strengthened by the fact that she attended school operated by defendant for training in the operation of the Knoxville terminal.

The Court, therefore, finds that she was an employee of the defendant during the critical period involved in this lawsuit, and is entitled to wages from this company which have not been paid at the minimum rate on the same basis that her husband is entitled to compensation. In fashioning this judgment the same pattern will be followed in awarding the amount to her as was followed in awarding the amount to the husband. That is to say, of course, she is not entitled to compensation for work done while her husband was there and drawing pay for working nor will her hours be 90 hours per week but will be on the basis of 11 hours per day on week days and five hours on Sundays, that is, 71 hours.