George P. SHULTZ, Secretary of Labor

v.

DEANE–HILL COUNTRY CLUB, INC.

Civ. A. No. 6606.

United States District Court,
E. D. Tennessee, N. D.

Sept. 26, 1969.

———◆———

Marvin Tincher, Regional Attorney, Dept. of Labor, Nashville, Tenn., for plaintiff.

W. E. Badgett, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

George P. Shultz, Secretary of Labor, seeks to enjoin Deane-Hill Country Club, Inc. from violating Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended. 29 U.S. C. § 215(a) (2) and (5). The Secretary also seeks payment of any unpaid minimum wages and overtime compensation due employees under the Act. 29 U.S.C. § 217.

The Secretary claims that Deane-Hill is an enterprise within the meaning of Section 3(r) of the Act.[1] 29 U.S.C. § 203(r). The Secretary contends that during the period since February 1, 1967 the Deane-Hill facilities and activities were related and performed through unified operations and under common control and for common business purposes. He says that the enterprise has employees engaged in interstate commerce or in the production of goods for commerce, including employees handling, selling or otherwise working on goods that have been moved in, or produced for commerce by other persons, and that its annual gross volume of business was not less than $500,000.00 ($250,000.00 since February 1, 1969) exclusive of excise taxes. Therefore, he concludes that Deane-Hill meets the test of a covered enterprise as defined in Section 3(s) (1) of the Act (29 U.S.C. § 203(s) (1)), which is as follows:

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—

"(1) during the period February 1, 1967, through January 31, 1969, is an enterprise whose annual gross volume of sales made or business done is not less that $500,000 (exclusive of excise taxes at the retail level which are separately stated) or is a gasoline service establishment whose annual gross volume of sales is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated), and beginning February 1, 1969, is an enterprise whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated);"

The Secretary likewise contends that during the period since February 1, 1967 Deane-Hill has either paid some of its employees less than the minimum wage or has failed to pay overtime com-

---

1. "(r) 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor: * * *."

pensation as provided by the Act;[2] that in the instances where hours worked records have been maintained, these violations appear on the face of Deane-Hill's payroll records; that Deane-Hill has failed to maintain records of daily and total weekly hours worked with respect to certain employees; and that Deane-Hill has refused to make its records available to the Secretary's representative.

Defendant Deane-Hill denies that it is covered by the Act. It claims that it is the ultimate consumer, and when any goods, chattels, or other articles in commerce reach it, such goods have ceased to be in interstate commerce at the time of delivery to defendant. Defendant denies that it is engaged in interstate commerce to such an extent as to be covered by the Act because its annual gross volume of sales or business done is less than that amount required by the Act. Defendant denies that any pro shop or golf rental operations conducted at its location should be included within its annual gross volume of sales because these activities are not part of its "enterprise." Defendant subsequently amended its answer to additionally claim that any complaint was barred by a good faith reliance upon an interpretation of the Administrator of the Wage and Hour Division of the Department of Labor under Section 10 of the Portal-to-Portal Act of 1947. 29 U.S.C. § 259.

Defendant is a Tennessee corporation located in Knoxville, Tennessee. It operates a private country club and sells goods and services to its members or their guests. The membership is around 1,400, 450 of which are golf members. There are approximately 1,490 outstanding shares of stock, 595 of which are owned by Mr. Jack Comer, or about 40%. Mr. Comer has voted by proxy 283 shares, or 19%, at one or more meetings of the stockholders. Mr. Comer, his wife and brother are members of the Board of Directors. Dr. J. P. Cullom, the owner of 215 shares of stock, is Chairman of the Board. The President, Mr. Lloyd Cannon, owns one share of stock. He is a full-time employee and works as night manager. Mr. J. W. Townsend is the day manager. The remaining shares of stock are owned by some 55 to 60 persons owning a minimum of one share to a maximum of 65 shares.

Deane-Hill's club building is located on a parcel of land consisting of 160 acres. There are also located on the land a club house, a swimming pool and a golf course. Facilities for serving food and beverages are located within the club house. There is also a Pro Shop. Club members desiring to use the

---

2. Section 206(b)

"Every employer shall pay to each of his employees * * * who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, * * * wages at the following rates:

"(1) not less than $1 an hour during the [period February 1, 1967—February 1, 1968] * * *

"(2) not less than $1.15 an hour during the [period February 1, 1968—February 1, 1969] * * *

"(3) not less than $1.30 an hour during the [period February 1, 1969—February 1, 1970] * * *."

Section 207(a)(2)

"No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce * * *

"(A) for a workweek longer than forty-four hours during the [period February 1, 1967—February 1, 1968] * * *.

"(B) for a workweek longer than forty-two hours during the [period February 1, 1968—February 1, 1969]

"(C) for a workweek longer than forty hours after [February 1, 1969] unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

golf course are required to check in through the Pro Shop where they pay green fees and driving range fees, rent golf carts and purchase any golf equipment or supplies they may need. These proceeds are turned over to the defendant at the end of the day. Deane-Hill furnishes the space, pays all the utility bills for the Pro Shop, pays the wages and furnishes meals to the employees working in the Pro Shop. The basic inventory of the Pro Shop is owned by the defendant, with the golf professional ordering any merchandise as needed.

Prior to October 1, 1967, Mr. Lloyd Foree was defendant's golf professional, and Mr. Vernon Thwaites was the assistant professional. Each was paid a weekly salary by the defendant. The salary of Mrs. Thwaites, who worked in the Pro Shop, was also paid by the defendant. Foree left on October 26, 1967 and was replaced by Thwaites, who made no investment in the merchandise on hand. Thwaites' employment terminated on September 24, 1968, and defendant was without a golf professional until February 15, 1969, when Foree returned. Foree made no investment in the merchandise stocked. He stated, in effect, that he wasn't financially able to pay for the stock when he returned to Deane-Hill. However, as he becomes financially able, he expects to pay Mr. Comer for the inventory. As he repays Mr. Comer's advancements, he will receive the profits from the Pro Shop. He also stated that he ran the Pro Shop as his own business.

Since February 24, 1967, Jesse Townsend, defendant's day manager, has made all bank deposits for the Pro Shop, approved the merchandise ordered and signed all checks in payment thereof and kept the books and records, including those pertaining to golf cart income. Foree, the pro, has recently received authority to sign checks on the Pro Shop's account.

The golf carts used by defendant's members on its golf course are owned by Country Clubs, Inc., a Tennessee corporation owned exclusively by Mr. Jack Comer, President and Treasurer, and his wife, Marjorie Comer, Secretary. Mr. Lloyd Cannon, night manager for the defendant, is Vice President of Country Clubs, Inc. Country Clubs, Inc. has no employees of its own and the carts are repaired, maintained, and generally looked after by defendant's employees, but Country Clubs, Inc. pays the mechanics of defendant $200.00 extra for looking after the carts. Defendant furnishes parking and storage space for the carts. Club members renting a golf cart are required to enter into a written lease. Exhibit 1 is a lease form. The defendant's name and address head the form. The form contains language that indicates "The Club" is the lessor. Mr. Comer testified that this form was discontinued before the investigation which preceded this suit. Mr. Foree, the present pro, stated that the form had been discontinued within the last month. Cart rental fees are collected by the Pro Shop employees. The defendant retains 25% of the gross rental receipts and turns the balance over to Country Clubs, Inc.

All of the activities conducted at the defendant's country club are related activities. They are conducted through unified operation and under common control for a common business purpose. Wirtz v. Columbian Mutual Life Insurance Co., 380 F.2d 903 (C.A.6, 1967). The cart rental and Pro Shop activities are included in the defendant's enterprise activities. Wirtz v. Barnes Grocer Co., et al, 398 F.2d 718 (C.A.8, 1968); West v. Wal-Mart, Inc., 264 F.Supp. 158 (W.D.Ark., 1967).

The Court further finds that defendant's golf professionals are not independent contractors within the meaning of Section 3(r) as performing related activities for the enterprise. Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); Western Union Tele. Co. v. McComb, 165 F. 2d 65 (C.A.6) cert. den. 333 U.S. 862, 68 S.Ct. 743, 92 L.Ed. 1141, reh. den. 333 U.S. 883, 68 S.Ct. 911, 92 L.Ed. 1158 (1948); and see this Court's ruling in

Burry v. National Trailer Convoy, Inc., 239 F.Supp. 85 (E.D.Tenn., 1963), aff'd. 338 F.2d 422 (C.A.6, 1964).

Mr. Townsend stated that the revenue for the year 1967 was $497,762.00, including dues but which did not include income from the golf carts, Pro Shop, sales of merchandise and total golf cart rentals. With these items included, the annual gross volume of sales or business would exceed $500,000.00. He further stated that the revenues for 1968, not including the Pro Shop revenues, amounted to $539,999.00.

■ In determining whether the gross volume test of Section 3(s) is met, the gross receipts of all the activities which make up the enterprise must be counted. Wirtz v. Jernigan, 405 F.2d 155, 159 (C.A.5, 1968); Wirtz v. Columbian Mutual Life Ins. Co., 246 F.Supp. 198 (W.D.Tenn., 1965), aff'd. 380 F.2d 903 (C.A.6). The Court finds that during the period since February 1, 1967 defendant's annual gross volume of sales made or business done exceeded $500,-000.00.

■ The defendant regularly receives each week shipments of merchandise from out-of-state suppliers. It regularly purchases and receives a substantial volume of goods which have moved in interstate commerce or which were produced for commerce. Most of the merchandise is bought from local distributors. A large part of this merchandise moved in interstate commerce before it reached the distributors. Defendant's employees order, receive, handle, sell or otherwise work on goods which moved in interstate commerce and keep the books and records pertaining to these goods.

Defendant has employees engaged in interstate commerce or in the production of goods for interstate commerce, including employees handling, selling or otherwise working on goods that have moved in or were produced for commerce. These employees regularly order and receive merchandise shipped directly from out-of-state suppliers. Such activities constitute engagement in commerce or in the production of goods for commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460; McComb v. W. E. Wright Co., 168 F.2d 40, 42 (C.A.6), cert. den. 335 U.S. 854, 69 S.Ct. 83, 93 L.Ed. 402; Mitchell v. Royal Baking Co., 219 F.2d 532, 534 (C.A.5); McComb v. Herlihy, 161 F.2d 568, 570 (C.A.4). See also, Mabee v. White Plains Publ. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607.

■ Defendant's employees also use regularly goods which although purchased locally have previously moved in interstate commerce and this is sufficient to satisfy the test used to determine whether employees are engaged in interstate commerce. Section 203(s) extends coverage to enterprises which may not purchase goods directly from out-of-state but which do have employees who handle "goods that have been moved in * * * commerce" and which have come to rest within the state. Wirtz v. Melos Construction Co., 408 F.2d 626, 629 (C.A.2, 1969); Wirtz v. Mayer Construction Co., 291 F.Supp. 514 (D.C.N. J., 1968); cf. Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290.

The defendant during the period since April 24, 1967 has failed to pay the applicable minimum wage or overtime compensation to the list of employees and the respective amounts shown on Exhibit 17, which was explained in detail by Mr. Frey Gray, a compliance officer of the Knoxville Wages and Hours Administration.[3]

■ The Fair Labor Standards Act as originally enacted in 1938 applied only to those employees who were themselves engaged in interstate commerce or in the production of goods for commerce. In 1961, as amended in 1966, the Act's coverage was extensively broad-

3. Defendant maintained no record of hours worked with respect to ten employees, but the payroll records show the amount of wages paid.

ened so as to include all employees of certain enterprises meeting the conditions prescribed in Section 3(r) and 3(s) of the Act. (See Footnote 1). Thus, where the employer's operations satisfy the prescribed statutory tests, all employees in the enterprise are covered without regard to the nature of their activities. Childress v. Earl Whitley Enterprise, 388 F.2d 742, 744–745 (C.A.4, 1968); Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).

Defendant amended its answer on September 3, 1969 by adding the defense that it acted in good faith and in conformity with the regulations and interpretations placed upon the Fair Labor Standards Act by the Department of Labor, and particularly Section 779.249 and Section 779.319 Interpretative Bulletin "The Fair Labor Standards Act as Applied to Retailers of Goods or Services", 29 C.F.R. § 779, which states on page 35 under Section 779.249:

"FOURTH CONDITION OF A 3(s) (1) ENTERPRISE; INFLOW TEST

"To come within the scope of section 3(s) (1) the enterprise in addition to the other conditions, must purchase or receive goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more. To meet this condition, it must be shown that (a) the enterprise purchases or receives goods for resale (section 779.251) and (b) that such goods move or have moved across State lines (section 779.252); and (c) that such purchases and receipts amount in total annual volume to $250,000 or more (Section 779.256)."

Defendant says that it did not during the years in question receive for resale any of the goods that moved across state lines which amounted to an annual volume of $250,000.00 or more and has not met the conditions of an enterprise as defined in 3(s) of the Act as amended.

Defendant further says that Section 779.319 provides that "A RETAIL OR SERVICE ESTABLISHMENT MUST BE OPEN TO THE GENERAL PUBLIC," and that defendant is not open to the public.

"* * * Generally, however, an establishment, wherever located, will not be considered a retail or service establishment within the meaning of the Act, if it is not ordinarily available to the general consuming public. * * *"

p. 50 of the Bulletin

Defendant says that it relied upon the Interpretative Bulletin and that even if it is engaged in interstate commerce it is not subject to the Act and is not liable for its failure to pay minimum wages or overtime compensation by reason of the Portal-to-Portal Act of 1947, 29 U.S.C. § 259, which provides in pertinent part as follows:

"§ 259. RELIANCE IN FUTURE ON ADMINISTRATIVE RULINGS, ETC., * * *

"(a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial

authority to be invalid or of no legal effect.

"(b) The agency referred to in subsection (2) shall be—

"(1) in the case of the Fair Labor Standards Act of 1938, as amended—The Administrator of the Wage and Hour Division of the Department of Labor;"

\* \* \* \* \* \*

During the trial, statements were made by counsel that the Nashville Office of the Labor Department had caused to be printed on Interpretative Bulletin 779 language pointing out that the bulletin was subject to the changes made in the 1961 Act by the amended 1966 Act. Both parties submitted a copy of the Interpretative Bulletin to the Court. The copy provided by the Secretary has no notation about the 1966 amendments. The copy submitted by defendant is stamped "The Fair Labor Standards Amendments of 1966 (effective February 1, 1967) have not been incorporated into this document. See Public Law 89–601 which contains these amendments."

An administrative ruling appears to have been made on private clubs in response to a letter of a representative of one of such clubs as to whether or not the Fair Labor Standards Act was applicable. This ruling is in letter form and reads in pertinent part as follows:

"As is recognized in your letter, the term 'retail or service establishment', for the purposes of the Act requires that the establishment be available to the general public. Since the country and town clubs with which you are concerned are available only to a select group of persons who have been specially selected to club membership, you are right in assuming the retail exemption does not apply. Therefore, the exemptions provided in the Act that are applicable only to employees of retail or service establishments (such as section 13(a) (2), section 13(b) (18), the 40 percent tolerance for executive and administrative em-

ployees in section 13(a) (1), and the full-time student provision in section 14(b)) are not available to employees of private clubs."

Opinion Letter No. 655, Wage-Hour Administrator, September 5, 1967, C.C.H. Lab.L.Rep. Wages-Hours ¶ 30,646.

■ Defendant's counsel stated during the argument that defendant received no notice of the opinion and did not learn about it until recently. The Secretary did not promulgate any rulings or regulations under the Fair Labor Standards Act as amended in 1966 and the defendant cannot rely on such inaction of the Secretary as a defense to the claims in the complaint under the Portal-to-Portal Act. 29 U.S.C. § 259.

The Secretary does not contend that the defendant is a retail establishment holding itself out to the general public. He says defendant does not qualify as a "retail or service establishment" within the meaning of Section 213(a) (2) of the Act. He, therefore, contends that since defendant does not qualify for the retail or service establishment exemption it is not exempt from the requirements of the Act. Section 213(a) (2) appears to apply only to those establishments which are retail, but plaintiff says even if defendant's establishment were open to the public and retail in character, the exemption would not apply in any event under the further provisions of section 213(a) (2) since defendant is an "enterprise described in section 3(s)" and has an annual dollar volume of sales in excess of $250,000.00 exclusive of excise taxes.

■ The Court is of the opinion and finds that defendant does not come within the exemption provided for in Section 213 (a) (2) of the Act because it is an enterprise within the meaning of the 1966 amendment to the Act.

In sum, the Court holds that defendant, Deane-Hill Country Club, meets the test of a covered enterprise as described in Section 203(s) (1) of the Fair Labor Standards Act so as to bring its em-

ployees within the coverage of the Act. Defendant is subject to the Act and has paid a number of its employees shown on Exhibit 17 less than the applicable minimum wage or failed to pay overtime compensation to the employees named in the exhibit. Plaintiff is entitled to the injunctive relief sought in the complaint.