**Robert G. LeCOMPTE, et al.,
Plaintiff-Appellants
Cross-Appellees,**

v.

**CHRYSLER CREDIT CORPORATION,
Defendant-Appellee Cross-Appellant.**

**No. 84–3506.**

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1986.

Rehearing and Rehearing En Banc
Denied Feb. 25, 1986.

Frank Sloan, Jefferson, La., for plaintiff-appellants cross-appellees.

Carl J. Schumacher, New Orleans, La., for defendant-appellee cross-appellant.

Before CLARK, Chief Judge, THORN-BERRY and EDITH HOLLAN JONES, Circuit Judges.

## OPINION

EDITH HOLLAN JONES, Circuit Judge:

Cross-appeals were filed from the judgment of the district court awarding overtime compensation to several plaintiffs based on Chrysler Credit Corporation's violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (1985). We are compelled to VACATE and REMAND for an award of statutory liquidated damages pursuant to 29 U.S.C. § 260 (1985). We approve, however, the district court's rejection of several plaintiffs' claims for retaliatory discharge, its finding of damages, and its rejection of Chrysler Credit's action for indemnity against two of the employees who, while in managerial positions, participated in the violation.

## I. BACKGROUND

From January 1979 to January 1982, plaintiffs worked in the customer service and adjustment office of the New Orleans branch of Chrysler Credit Corporation. Their responsibilities were essentially to collect delinquent accounts, arrange for

voluntary surrender or repossession of vehicles, and in some cases, to assist with audits of area Chrysler dealerships to detect if a dealership had gone "out of trust." Plaintiff Leininger was Customer Service Supervisor from May 1979 through October 1981, when he was replaced by plaintiff Giordano. Other plaintiffs were subordinate to Leininger or Giordano. The New Orleans Branch Manager throughout the relevant period was Michael Heacock. The rigors of automobile account collection work can easily be surmised, and the district court found that all of the plaintiffs were required regularly to work in excess of 40 hours per week due to the nature of their jobs and the pressure exerted by their supervisors. The court further found that while compensation was paid for some overtime work, this was on a limited and sporadic basis. Although Chrysler Credit's official policy prohibited overtime unless authorized by the Branch Manager, the court found that supervisory personnel at the New Orleans branch regularly ignored the company policy. The voluntary resignations of five of the nine plaintiffs, accompanied by letters stating that long hours of uncompensated overtime was one of their reasons for leaving Chrysler Credit, indicated to the trial court that Heacock knew about the overtime being worked by those employees. In fact, on several occasions, Heacock attempted to delete references to uncompensated overtime from those letters of resignation. The court found that each plaintiff worked an average of ten hours per week uncompensated overtime throughout the relevant period.

Despite these findings, which were carefully related to specific testimony at trial, the district court also concluded that, based on its official policies and practices in regard to overtime compensation, Chrysler Credit reasonably believed that it was in compliance with the Fair Labor Standards Act and had no knowledge that its supervisory personnel regularly ignored those policies.

Four of the nine plaintiffs, Conway, Giordano, Leininger and Neumann, were discharged shortly after filing this action. The trial court concluded, however, that Chrysler Credit had not retaliated against these employees because of their participation in the lawsuit, but that each had been discharged for good cause. Leininger and his wife were driving repossessed cars for their personal use, in direct violation of corporate policy. And all four plaintiffs were connected with the preparation of false audit reports concerning a local Chrysler dealer, which reports were brought to the attention of Chrysler Credit management following the filing of the lawsuit. The false audits had permitted the dealer to sell inventory financed by Chrysler Credit without remitting proceeds to Chrysler Credit.

## II.  LIQUIDATED DAMAGES

■ The trial court was apparently concerned that several of the plaintiffs would profit unjustly from an award of liquidated damages, pursuant to 29 U.S.C. § 216(b) which provides that "any employer who violates the provisions of § 206 or § 207 of this title shall be liable to the ... employees affected in the amount of their unpaid ... overtime compensation ... and *in an additional equal amount as liquidated damages.*" (Emphasis added.) Leininger and Giordano, during their respective tenures as supervisory personnel, were largely responsible for requiring subordinates to work uncompensated overtime and falsifying the employment records to disguise this. They and two other employees were discharged for good cause. Thus motivated, the trial court amended two of its findings of fact during post-judgment proceedings to reflect Chrysler Credit's "reasonable belief" that it was not violating the Fair Labor Standards Act and its "good faith" in attempting to comply with the law. The court then held that it could discretionarily withhold the award of liquidated damages because Chrysler Credit had not acted "willfully."

Despite our sympathy with the equities that prompted the district court's determination, it does not conform to the statute or

the law of this circuit. 29 U.S.C. § 260 provides that:

> In any action commenced ... on or after May 14, 1947 to recover unpaid ... overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the ... Act ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 216 of this title.

The purpose of this amendment to the Fair Labor Standards Act was to mitigate the harshness of the then-strict liability offense of violating Section 216, with its attendant double-damage assessment. *See Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1310–11 (5th Cir.1976). Section 260, however, contains its own limitations: in order to be relieved of liability for liquidated damages, an employer must demonstrate both good faith and reasonable grounds for believing that it was not violating the Act. The district court incorrectly applied a test of willfulness rather than the specific standards in § 260. Moreover, this circuit has stated plainly that an employer cannot satisfy its dual burden under § 260 solely by suggesting that lower-level employees are responsible for the violations, *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 827–28 (5th Cir.1973), or by professing ignorance of the requirements of the Act. *Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir.1979). Thus, Chrysler's attempt to thwart liability based on its asserted ignorance of the plaintiff-employees' abuses is legally unavailing.

In any event, the district court's legal finding of lack of willfulness and factual findings of lack of knowledge of violations and reasonable belief that its overtime policies comported with the Act simply do not square with the court's recitations of other facts. The court noted that Chrysler's Branch Manager, Heacock, attempted on several occasions to delete references to uncompensated overtime from letters of resignation submitted by certain plaintiffs. From such incidents, Heacock knew, or in the exercise of reasonable diligence should have known, that considerable overtime work was being required of accounts adjusters. Blissful ignorance also cannot be credited in view of the finding that the plaintiff employees worked an average of ten hours per man per week overtime throughout the period covered by the statute of limitations. The district court's refusal to award liquidated damages cannot be approved.

### III. RETALIATORY DISCHARGE AND DAMAGES

Each disadvantaged party appeals from the district court's failure to uphold a claim of retaliatory discharge and its assessment of the plaintiffs' damages. These conclusions are reviewed according to the clearly erroneous standard. *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983), and both are well supported in the trial court record.

The events leading to Chrysler's discharge of four of the plaintiffs (the other five had previously voluntarily resigned) have been recited above. One of the employees was fired immediately upon discovery that he and his wife were driving repossessed Chrysler vehicles, contrary to explicit company policy. The others were discharged following an audit of a New Orleans-area Chrysler dealer in July 1983, which revealed that they had been falsifying the dealer's accounts to Chrysler Credit in exchange for monetary "favors." 29 U.S.C. § 215(a)(3) prohibits discharge or discrimination against any employee for filing a complaint under the Fair Labor Standards Act. This provision requires at least a finding that the employee was discharged because he filed a complaint. *Hodson v. Texaco, Inc.*, 440 F.2d 662, 663 (5th Cir. 1971); *Goldberg v. Bama Manufacturing Corp.*, 302 F.2d 152, 153 (5th Cir.1962).

The district court's conclusion that plaintiffs failed to carry their burden of proof that they were discharged for asserting their perceived rights under the Act is not clearly erroneous.

■ The total damage award of approximately $74,500 was derived by applying the agreed hourly rate for each employee to the estimated amount of covered overtime worked by each during the three-year period. Testimony at trial varied concerning the amount of overtime worked by the plaintiffs, partly because precise records of hours worked were unavailable. Under such circumstances the court correctly stated that the employee need only produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed.2d 1515 (1946); *Hodgson v. Jones*, 434 F.2d 1061, 1062 (5th Cir.1970). The court's conclusion cannot be considered clearly erroneous.

### IV. CHRYSLER CREDIT'S COUNTERCLAIM FOR INDEMNITY

■ The district court dismissed Chrysler Credit's counterclaim for indemnity against plaintiffs Leininger and Giordano which was based on the theory that they, when acting in a supervisory capacity, had perpetrated the Fair Labor Standards Act violations for which Chrysler Credit is now held liable. The district court's disposition was proper. To engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution, would undermine employers' incentive to abide by the Act, and would differentiate among employees entitled to receive overtime compensation in a way which does not otherwise exist in the statute.

Chrysler Credit adduces no federal statutory or case law authority for maintaining an action in indemnity against Leininger and Giordano, and its argument rests entirely upon Louisiana law governing indemnity actions. Such authority, applied as a de facto amendment to the Fair Labor Standards Act, would conflict with its mandate. Congress legislated in detail the standards and enforcement procedures for overtime and minimum wage compensation in all activities affecting interstate commerce. 29 U.S.C. § 201 *et seq.* No cause of action for indemnity by an employer against its employees who violate the Act appears in the statute, nor in forty years of its existence has the Act been construed to incorporate such a theory. Where Congress has undertaken to regulate an area, state law must yield to the extent it is in conflict with the validly exercised federal law-making effort. U.S. Const. art. 6, cl. 2; *Chicago and N.W. Transp. Co. v. Kabo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258, 265 (1981); *Perez v. Campbell*, 402 U.S. 637, 651–52, 91 S.Ct. 1704–12, 29 L.Ed.2d 233, 243–44 (1971); *United States v. State of Texas*, 695 F.2d 136 (5th Cir.), *cert. denied* 464 U.S. 933, 104 S.Ct. 336, 78 L.Ed.2d 305 (1983). Creation of a state-law-based indemnity remedy on behalf of employers would not serve the congressional purpose of creating and maintaining minimum standards of employment throughout the national economy. On the contrary, an employer who believed that any violation of the overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute and might be inclined to close its eyes, as Chrysler allegedly did here, to the excessive zeal of middle-management personnel. Additionally, imposing an indemnity responsibility upon Leininger and Giordano would deprive them of overtime compensation to which the federal statute otherwise entitles them. The Act does not place a "good faith" burden upon employees who seek to be compensated for their overtime work, unless the employees were found to have worked unauthorized overtime or falsified records to create a cause of action under 29 U.S.C. § 216(b) (1985), *Burry v. National Trailer*, 239 F.Supp. 85 (E.D.Tenn.1963), *aff'd.*, 338 F.2d 422 (6th Cir.1964), a situation which did not occur here. As en-

forcement of the Louisiana-law-based cause of action for indemnity would squarely conflict with the Act, the state law cannot be applied to this case.

For the foregoing reasons, the judgment of the district court is VACATED and REMANDED solely to award liquidated damages to the plaintiffs in accordance herewith.