IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARGRETA KILGORE, a single woman, | ) | No. 32277-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHRINERS HOSPITALS FOR | ) | PUBLISHED OPINION |
| CHILDREN, a Colorado corporation, | ) | |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Margreta Kilgore sued Shriners Hospitals for Children (Shriners) in September 2010 for wrongful termination after Shriners discharged her in July 2010. Shriners counterclaimed in December 2011, partly asserting Ms. Kilgore was "liable to Shriners for all damages, and economic loss" caused by her underpayment of Shriners' employees when Ms. Kilgore was its director of fiscal services. Clerk's Papers (CP) at 13. The trial court dismissed Shriners' counterclaim at summary judgment, ruling it had no cognizable legal claim and the action was barred by the one-year statute of limitations for contribution under RCW 4.22.050. In this interlocutory appeal, Shriners contends its counterclaim is properly characterized as a tenable implied contractual indemnity claim between employers and employees, not a contribution claim. We affirm, deciding Shriners has no cognizable legal claim under federal or state law without reaching the statute of limitations issues.

FACTS

Ms. Kilgore, as the director of fiscal services at Shriners, was responsible for administering its payroll practices. Shriners' policy stated hourly employees had to clock in/out within seven minutes of the scheduled start/end of their shifts unless approved by a manager. Administering this policy, Ms. Kilgore edited employee timecards back to within the seven minute window absent manager approval. Ms. Kilgore and Shriners dispute if Shriners' management knew of Ms. Kilgore's actions.

In June 2010, on Shriners' ethics hotline, an employee anonymously alleged Ms. Kilgore and another person falsified employee timecards. Following an investigation, Shriners determined the timecard editing violated federal and state wage laws and terminated Ms. Kilgore on July 24, 2010. On November 18, 2010, Shriners paid $383,298.76 in back wages to its employees.[1] Ms. Kilgore sued Shriners for wrongful termination on September 17, 2010. On December 29, 2011, Shriners asserted a counterclaim against Ms. Kilgore for damages suffered as a result of her actions.

In December 2013, the trial court dismissed Shriners' counterclaim on Ms. Kilgore's motion for partial summary judgment. The court concluded (1) no "substantive grounds" supported Shriners' counterclaim and (2) Shriners' counterclaim was one for contribution and was barred by the one-year statute of limitations seen in RCW 4.22.050. CP at 451. Shriners moved for reconsideration, arguing the counterclaim

---

[1] Shriners paid $171,115.00 for wages owed and $212,183.76 in damages plus interest.

No. 32277-7-III
*Kilgore v. Shriners Hosps. for Children*

was for indemnity, not contribution, and was subject to the three-year statute of limitations seen in RCW 4.16.080. The court denied Shriners' motion, ruling:

> 1. There is no substantive legal basis for [Shriners'] Counterclaim alleging that [Ms. Kilgore] is liable to [Shriners] for wage payments made to Shriners' employees based on payroll timecard edits; therefore, there is no cognizable legal claim that [Shriners] may bring against [Ms. Kilgore].
> 2. [Shriners'] claim against [Ms. Kilgore] for the wage payments paid to Shriners employees is barred by the one-year statute of limitations set forth in RCW 4.22.050.

CP at 454.

Urging the ruling involved a controlling question of law, Shriners received trial court CR 54(b) certification for this appeal.[2] This court granted discretionary review.

ANALYSIS

The issue is whether the trial court properly dismissed Shriners' counterclaim for damages on summary judgment. Shriners contends the trial court incorrectly (1) found Shriners had no cognizable legal claim and (2) characterized Shriners' counterclaim as one for contribution and found Shriners' claim barred by the one-year statute of limitations under RCW 4.22.050. Shriners argues its counterclaim is based on implied contractual indemnity arising out of the employer-employee relationship and is thus subject to the three-year statute of limitations of RCW 4.16.080(3).

We review questions of law and summary judgment rulings de novo. *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). Our inquiry is the same as the trial court. *Id.* All facts and inferences are interpreted in the light most

___

[2] The proceedings below have been stayed pending the result of this appeal.

3

favorable to the nonmoving party, Shriners. *Id.* "Summary judgment is appropriate only if the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

Shriners correctly argues implied contractual indemnity survived the adoption of the Tort Reform Act. *See Central Wash. Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 513 n.3, 946 P.2d 760 (1997) (implied contractual indemnity rights survived RCW 4.22.040(3)'s abolition of common law indemnity between joint tortfeasors); *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 590-91, 5 P.3d 730 (2000) (clarifying that RCW 4.22.040 abolished only the common law right of indemnity between joint tortfeasors and only to the extent it replaced those rights with contribution rights); *Toste v. Durham & Bates Agencies, Inc.*, 116 Wn. App. 516, 520, 67 P.3d 506 (2003) ("Contractual indemnity and indemnity between non-joint tortfeasors survived the adoption of RCW 4.22.040."). Even so, Shriners has no cognizable legal claim.

Shriners alleges Ms. Kilgore violated sections 207 and 216(b) of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219. 29 U.S.C. § 216(b) provides "[a]ny employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." Additionally, Shriners alleges Ms. Kilgore violated Washington's Minimum Wage Act (MWA), chapter 49.46 RCW. But Shriners has not presented, nor has our research disclosed, any federal statutory or case law authority for maintaining an action in

4

indemnity against Ms. Kilgore; rather, Shriners' argument rests entirely upon Washington law.

In *LeCompte v. Chrysler Credit Corporation*, 780 F.2d 1260, 1264 (5th Cir. 1986), the court held the district court properly dismissed the employer's indemnity claim notwithstanding the employer's evidence that supervisory personnel regularly ignored the employer's policy prohibiting unauthorized overtime. Initially, the court noted the FLSA presently does not contain a cause of action for indemnity and has never historically embraced such a cause of action. *Id.* The court explained that allowing a claim for indemnity would frustrate Congress' purpose in enacting the FLSA because an employer who believed any violation of the FLSA's overtime or minimum wage provisions could be recovered from its employees would have a diminished incentive to comply with the FLSA. *Id.*

Other federal appellate courts having considered the issue agree with the *LeCompte* court's reasoning. *See, e.g., Lyle v. Food Lion Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (affirming dismissal of employer's counterclaim and third-party complaint for indemnity against plaintiff-supervisor for plaintiff's FLSA claims). The Tenth Circuit similarly held an employer's third-party complaint seeking indemnity from an employee for alleged FLSA violations was preempted, stating indemnity actions were "not part of the comprehensive statutory scheme set forth by Congress." *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (holding no right of contribution or

5

indemnification existed for employers found liable under the FLSA because the FLSA's text makes no provision for it, employers are not members of the class for whose benefit the FLSA was enacted, the FLSA has a comprehensive remedial scheme, and the FLSA's history is silent on a right to contribution or indemnification).

Nonetheless, Shriners argues (1) Washington law recognizes a claim for implied contractual indemnity and (2) Shriners has alleged sufficient facts to warrant submission of its counterclaim to a jury. But Shriners again fails to present authority supporting its position that Washington law recognizes employers' claims for indemnity under the MWA. As mentioned, the cases cited by Shriners support its proposition that a claim for implied contractual indemnity survives the Tort Reform Act. Shriners properly cites case law holding an employer has a right to seek indemnity and/or contribution from their employees when employees commit wrongful acts. *See Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 409-10, 116 P. 861 (1911); *Gaffner v. Johnson*, 39 Wash. 437, 438-39, 81 P. 859 (1905). But none of the cited cases set out the elements of a claim for implied contractual indemnity in the context of the MWA.

Arguments similar to Shriners have been rejected in other jurisdictions. The Fifth Circuit rejected the application of state-law indemnity principles, reasoning creation of a state-law based indemnity remedy on behalf of employers would not serve the purpose of national minimum wage standards and would similarly diminish employer incentive to comply with the FLSA. *LeCompte*, 780 F.2d at 1264 ("To engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy

6

Clause of the Constitution [and] would undermine employers' incentive to abide by the [FLSA]."); *see also Martin*, 977 F.2d at 1408 (stating "[t]he conflict between the purposes of federal law and a state cause of action require the latter to yield"); *Herman*, 172 F.3d at 144 (not allowing an indemnity or contribution claim under state law because "the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect").

When construing the provisions of the MWA, courts "may consider interpretations of comparable provisions of the [FLSA] as persuasive authority." *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 524, 7 P.3d 807 (2000). Like the FLSA, the MWA embodies a public policy to establish a minimum for employee compensation. *Id.* (citing RCW 49.46.005); *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298, 996 P.2d 582 (2000) ("The FLSA is intended to be a floor below which employers may not drop.") (internal quotation marks omitted). Thus, as with the FLSA, the MWA's statutory goals would be undermined by diminishing the employer's compliance incentives if an employer were permitted to seek indemnity from its employees for statutory violations.[3] Therefore, Shriners does not have a cognizable legal claim under the FLSA or the MWA, and summary judgment was appropriate. Because Shriners cannot maintain a cause of

---

[3] The parties argue the applicability of RCW 49.52.050(2) and RCW 49.52.070. While RCW 49.52.070 does provide for civil liability of an agent or vice principal of an employer, it does so solely in actions brought by aggrieved employees. Nothing suggests the legislature intended to permit an indemnification or contribution claim to be brought by the *employer* against the agent or vice principal.

7

No. 32277-7-III
*Kilgore v. Shriners Hosps. for Children*

action against Ms. Kilgore under either the FLSA or the MWA and does not prevail, we do not reach the statute of limitations issues or Shriners' RAP 14 attorney fees request.

Affirmed.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.