**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

June 21, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| RHETT GREENFIELD, | No.  57156-1-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — Rhett Greenfield appeals the superior court's findings of fact, conclusions of law, and judgment affirming the Department of Labor & Industries (L&I) "Director's Order."[1,2] The Director's Order found that Greenfield was not an employee under the Washington Minimum Wage Act (MWA), chapter 49.46 RCW, and that the putative employer, the American Civil Liberties Union (ACLU), did not violate wage payment laws.  Greenfield argues there is insufficient evidence showing that he was exempt from the MWA.

Substantial evidence supports the finding that Greenfield provided gratuitous services to a nonprofit organization under RCW 49.46.010(3)(d).  Therefore, we hold that the employment

---

[1]  Clerk's Papers (CP) at 41.

[2]  The Director's Order affirmed an Office of Administrative Hearings (OAH) "Initial Order," dated June 10, 2021, and "Department Determination of Compliance," dated June 19, 2020.  CP at 175, 289.

No. 57156-1-II

exemption under RCW 49.46.010(3)(d) applies, and the ACLU did not violate the MWA. Accordingly, we affirm.

FACTS

A.    BACKGROUND

In 2017, Rhett Greenfield moved to Washington.  In anticipation of the move, he searched for jobs in Washington with "stability and kind of a trajectory to move forward" and that would allow him to support himself.  CP at 626.

Greenfield searched the ACLU of Washington website for career opportunities.  The ACLU is registered as a nonprofit organization with both a 501(c)(3) and a 501(c)(4) designation.[3]

In December 2017, Greenfield applied to an intake counselor internship with the ACLU.[4] The internship posting was in the "careers section" of the ACLU website.  CP at 642.  It was a part-time position, with a minimum expectation of 12 to 16 hours per week.  The internship posting stated, "The Intake Counselor internship provides excellent experience for individuals contemplating careers in public service, law, or public policy."  CP at 730.  The posting attracted Greenfield because he was considering whether he wanted to attend law school at the time.  The posting did not list wages or other compensation for the internship position.

In early 2018, the ACLU contacted Greenfield for an interview for the internship.  During the interview, the ACLU asked Greenfield, "'Why do you want to work at the ACLU?'"  CP at

---

[3] The ACLU's 501(c)(3) designation is its charitable arm while its 501(c)(4) designation allows it to engage in political advocacy.

[4] Greenfield applied for a paid, full-time legislative aide position with the ACLU in November 2017, but was not selected for the paid position.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57156-1-II

1299. Greenfield told his interviewer that he wished to work full-time for the ACLU. The ACLU did not guarantee or promise a full-time position to Greenfield. Neither Greenfield nor the ACLU ever discussed compensation, either during the interview or afterwards, and Greenfield never asked whether he would be paid.

The ACLU offered Greenfield the internship, which he accepted. Greenfield began interning at the ACLU in March 2018 two days per week. As an intake counselor, Greenfield staffed an "intake line" where he would provide community resource information to members of the public. CP at 1263. On occasion, if a caller had a complex legal issue, Greenfield would refer the caller to an ACLU attorney, who would then provide additional resources. However, the ACLU did not take legal cases from its intake line. The intake line was "primarily . . . a community resource," and was not integral to the ACLU's operations. CP at 1264.

Intake counselors were comprised of volunteers or interns. On any given day, three to four intake counselors staffed the phone lines. If no intake counselor was present to cover the intake line, the intake line would shut down. No intake counselors were paid.

Intake counselors generally completed an orientation with training on how to staff the intake line. The ACLU also hosted regular seminars for interns that covered a wide range of topics, including the ACLU's advocacy and litigation, criminal procedures, and police misconduct.

For the internship, Greenfield did not fill out any employment forms, such as a W-4 or I-9, nor did he ask for such documents. Greenfield did not receive any paystubs or report his hours. However, he considered himself an employee. Greenfield believed the internship position was "training for full-time employment at the ACLU." CP at 638. His understanding of the role was that he "would be directly involved in legal work or . . . receive some sort of legal training in order

3

No. 57156-1-II

to work as a legal professional." CP at 1300. Greenfield arrived at this understanding based on his "personal cognitive expectations . . . [and] personal goals," in addition to the internship's "job description and the way that it was phrased." CP at 642, 643. According to Greenfield, he did not receive information from the ACLU to correct any misunderstanding on his part or that indicated the intake counselor internship was a "'volunteer position.'" CP at 1309. Throughout his internship, Greenfield continued to communicate to his supervisor his desire for full-time employment at the ACLU.

The internship was meant to last six months, but Greenfield continued working as an intake counselor at the request of his supervisor until December 2018. During his internship, Greenfield applied to be a legal assistant—a paid position—with the ACLU. He was not selected for the position. When Greenfield left the internship, he completed an "Intern and Extern Evaluation." CP at 504. The evaluation form stated, "Volunteer interns play a critical role in the functioning of the ACLU of Washington." CP at 504. One of the questions on the evaluation was: "Overall, were you satisfied with your internship experience? Would you recommend this internship to others?" CP at 505. In response, Greenfield wrote:

> Yes, I think the internship was a positive experience overall, even if the lessons I learned from it were not entirely what I had anticipated. I think I began the internship with unclear expectations, and after a prolonged period of personal difficulty. This might have colored my time at the ACLU.

CP at 505.

According to Greenfield, the only time the phrase "volunteer interns" had been communicated to him was on the intern evaluation form. Greenfield asserted he "was very unclear about what had happened and the nature of the internship as [he] completed [the evaluation]." CP

4

No. 57156-1-II

at 669-70. However, Greenfield did not write on his evaluation that he felt he should have been paid.

In 2019, Greenfield applied to two additional paid positions at the ACLU, including one called a "Legal and Intake Assistant." CP at 263. In both his cover letters for the positions, Greenfield wrote that his interest in the positions stemmed from a desire to obtain stable, full-time employment. He did not receive a response from the ACLU on either application; instead, a personal acquaintance at the ACLU contacted Greenfield to let him know his application for one of the positions had been rejected.

B.      WAGE COMPLAINT

In February 2020, Greenfield filed a wage complaint with L&I. On the complaint form, he wrote, "I worked at the ACLU-WA as an 'Intake Counselor,' an unpaid internship that I believed would lead to a full-time position at this specific employer. I was never paid, nor was I hired. None of this was consensual." CP at 731. Greenfield left blank the section regarding wages he believed the ACLU owed him. Additionally, on the complaint form, Greenfield stated he did not have an employment agreement with the ACLU and that he believed other workers were affected in the same way he had been.

L&I Industrial Relations Agent, Debra Zach, was assigned to Greenfield's wage complaint. Zach contacted Greenfield and informed him that he appeared to be exempt from the MWA. Specifically, Zach cited to RCW 49.46.010(3)(d),[5] which provides an employee exemption under the MWA, and stated:

---

[5]  RCW 49.46.010(3)(d) provides:

5

No. 57156-1-II

> There are specific exemptions to the Minimum Wage Act found in RCW 49.46.010. . . . The ACLU . . . is a non-profit organization and as they are non-profit they can have unpaid volunteers. In your response it does not appear the employer had a wage agreement to pay you wages. You continued to work from March 2018-December 2018 with no pay, therefore the argument that you didn't consent to volunteer for no pay does not hold true as you continued working without pay. You state that you were not informed you would not be paid at the time of the interview yet you were not given a wage agreement and continued to work on a volunteer basis.

CP at 295. Zach gave Greenfield the option of withdrawing his wage complaint. She stated that if he wished to pursue a wage complaint, she would need additional records and evidence of a wage agreement.

In response, Greenfield cited to L&I's Administrative Policy ES.C.2 (2008).[6] Specifically, Greenfield argued that he was an employee because the following six criteria outlined in Administrative Policy ES.C.2 (2008) distinguishing interns from employees had not been met:

---

"Employee" includes any individual employed by an employer but shall not include:

. . . .

. . . Any individual engaged in the activities of an educational, charitable, religious, state or local governmental body or agency, or nonprofit organization where the employer-employee relationship does not in fact exist or where the services are rendered to such organizations gratuitously. If the individual receives reimbursement in lieu of compensation for normally incurred out-of-pocket expenses or receives a nominal amount of compensation per unit of voluntary service rendered, an employer-employee relationship is deemed not to exist for the purpose of this section or for purposes of membership or qualification in any state, local government, or publicly supported retirement system other than that provided under chapter 41.24 RCW.

[6] Greenfield relied on Administrative Policy ES.C.2 (2008), the policy in place at the time of his wage complaint. L&I updated Administrative Policy ES.C.2 in 2021, including the section regarding employment relationships with interns, which Greenfield now relies upon for his appeal. *See* Wash. Dep't of Lab. & Indus., Administrative Policy ES.C.2, at 9 (revised July 19, 2021)

No. 57156-1-II

> [T]he department looks to the federal Fair Labor Standards Act for certain training conditions exempted from that act. Under certain conditions, persons who without any expressed or implied compensation agreement may work for their own advantage on the premises of another and are not necessarily employees. Whether trainees are employees depends upon all of the circumstances surrounding their activities . . . . If all six of the following criteria are met, the trainees are not considered employees:
>> **4.1** The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school; and
>> **4.2** The training is for the benefit of the trainee; and
>> **4.3** The trainees do not displace regular employees, but work under their close observation; and
>> **4.4** The business that provides the training derives no immediate advantage from the activities of the trainees, and may in fact be impeded; and
>> **4.5** The trainees are not necessarily entitled to a job at the conclusion of the training period; and
>> **4.6** The trainees understand they are not entitled to wages for time spent in the training.

CP at 393 (Agency Rec. Ex. 8, L&I Administrative Policy ES.C.2 (2008)[7] at 6).

Zach disagreed with Greenfield's interpretation of Administrative Policy ES.C.2. Zach responded:

> I find that you meet all 6 of the items under trainees. You state that you were not entitled to a job at the conclusion of the period so 4.5 was met. You state you were unpaid for the entire duration of the time you provided services to the non-profit so section 4.6 was also met. However, you were a volunteer and not a trainee. Non-profit organizations such as the one you provided services for are entitled to have volunteers. . . . You were never offered bona fide employment with the company and you were never provided an agreed wage or told upon hiring that you would be compensated per the information you provided in your claim. You were never paid and continued to work in a volunteer capacity.

---

(Hours Worked), https://www.lni.wa.gov/workers-rights/_docs/esc2.pdf [https://perma.cc/2P4S-JVAW].

[7] Wash. Dep't of Lab. & Indus., Admin. Pol'y ES.C.2 (rev. Sept. 2, 2008) [https://perma.cc/7GMK-G84W].

7

No. 57156-1-II

CP at 298. Nevertheless, Zach requested additional information from Greenfield, such as written correspondence from the ACLU regarding wages or correspondence showing that Greenfield requested payment. Greenfield provided some of the requested information, such as an estimate of the hours and days he spent at the ACLU and the pay he believed he was entitled to. However, Greenfield stated he did not possess correspondence with the ACLU regarding wages; rather, his applications to paid positions at the ACLU were "documented evidence" of his "intention to work there full-time." CP at 299.

As part of the investigation, Zach also contacted the ACLU and requested information. The ACLU provided a written response to Greenfield's claims. Specifically, the ACLU stated:

> Mr. Greenfield joined a team of part-time volunteer interns . . . . The Intake Line provides the ACLU-WA with no direct benefit. . . . What we are is a pass through for various other community organizations that might be able to assist. This has always been an unpaid, part-time, limited term intern/volunteer program . . . . We have [never] displaced a paid employee in this role.

> Mr. Greenfield was always aware that the position answering our Intake Line was an unpaid role. . . . During the interview process it was made clear that it was an unpaid position for a limited period of six months. There was never a promise or expectation that this would turn into a paid position at the end of the term.

CP at 502.

In April 2020, Zach recommended a Determination of Compliance in the ACLU's favor. Based on Zach's investigation, L&I issued a Determination of Compliance. Greenfield appealed to the Office of Administrative Hearings (OAH).[8]

---

[8] As part of Greenfield's appeal of the Determination of Compliance, Greenfield complained about Zach's conduct and competence. Greenfield cited to a complaint Zach had filed against L&I alleging employment discrimination. Zach's own complaint against L&I is irrelevant to Greenfield's claim, and nothing in the record shows that Zach's complaint influenced her recommendation in Greenfield's case.

8

No. 57156-1-II

C.  PROCEDURAL HISTORY

In October 2020, the ACLU petitioned for and was granted intervention.[9]  In April 2021,

OAH held a two-day hearing on Greenfield's appeal.

During the hearing, Zach testified as outlined above.  Representatives from the ACLU also

testified as outlined above.  In addition, the ACLU representatives stated that they did not know

why internships are posted in the "career" section of the ACLU website.  CP at 1172.  The ACLU

Director of Human Resources, Karen Riley, stated that none of the internships listed in the careers

section of the website were paid.  Additionally, ACLU interns were often students who would

receive academic credit.

Greenfield testified about his motivations for applying for positions at the ACLU.  He

stated:

I respected the ACLU and its history . . . .

. . . .

I was looking for employment, and I also thought . . . that I should probably
go into the legal field because it seemed to kind of draw upon my undergraduate
interest and background in philosophy. . . .

. . . .

. . . I was looking also for a job and also potentially some kind of training
or something substantive that would provide . . . a clear structure with a particular
trajectory . . . .

---

[9]  A party may intervene in a matter when its "claim or defense and the main action have a question
of law or fact in common."  CR 24(b)(2).  In an administrative hearing, the presiding officer has
discretion to grant a petition for intervention "upon determining that the petitioner qualifies as an
intervenor under any provision of law and that the intervention sought is in the interests of justice
and will not impair the orderly and prompt conduct of the proceedings."  RCW 34.05.443(1).  The
ACLU is not a party to this appeal.

No. 57156-1-II

> . . . .

> . . . I want to be fair and I want to be clear here, I was not promised . . . explicitly anything, but I think you could claim that there was an implicit promise. If I talked about [working full-time] at the interview, if I'd raised it several times afterward, if that's why I'm there and [the ACLU] continue[s] to not clarify or say that's not going to happen . . . I believe it's a form of a contract recognized under the law, like, a unilateral or unwritten contract, maybe. I don't know.

> . . . I think that you could claim that there was an implicit promise, so I submitted [the wage claim] because I was trying to report what had happened because I thought that the internship was exploitative.

CP at 1295-96, 1314-15.

After hearing testimony from Zach, the ACLU, and Greenfield, the OAH issued an initial order stating that L&I properly issued a determination of compliance in the ACLU's favor. The initial order concluded:

> [Greenfield] has not met his burden of proving that he was anything other than an unpaid, volunteer intern, assisting with the ACLU-WA's intake program. He presented many arguments as to why his status should be recharacterized [as] an employee, but he did not provide any documentation or other evidence that an employer-employee relationship was established between himself and ACLU-WA. When he began the internship, the parties did not engage in any of the usual protocols or procedures for on-boarding an employee (such as completion of a W-4 form or I-9 form). The parties did not discuss rate of pay. [Greenfield] did not ask to be paid during the course of the internship nor did he complain about the lack of pay.

> . . . Relying upon [L&I] Administrative Policy ES.C.2, Section 4.6, [Greenfield] denies that he "consented" to his volunteer status . . . . However, his "consent" and/or understanding of the scope of the intake counselor position is shown by his actions, when he continued to work unpaid in that capacity for the period of March 2018 to December 2018. . . .

> . . . .

> . . . [Greenfield chose] to work gratuitously for ACLU-WA as an intake counselor for several months, during which time no formal employer-employee relationship was established. Under RCW 49.46.010(3)(d), [Greenfield] was not an employee

10

No. 57156-1-II

> and ACLU-WA did not violate any wage payment laws by not paying him for his volunteer services.

CP at 179-180.

Greenfield petitioned the L&I director for administrative review of the initial order. In his brief to the director, Greenfield noted that L&I had updated its Administrative Policy ES.C.2 in regard to interns based on the "primary beneficiary" test outlined in *Benjamin v. B & H Educ., Inc.*[10] CP at 51. Greenfield argued that the "primary beneficiary" test was the applicable legal standard in his case.

L&I responded by arguing that the "primary beneficiary" test did not apply to nonprofit organizations. L&I stated:

> The test under ES.C.2 laid out by Mr. Greenfield . . . is the test [L&I] applies when determining if an intern at a for profit organization is entitled to compensation. It has no bearing on determining whether a volunteer at a non-profit organization is entitled to payment. The [L&I] policy applicable to volunteers at non-profit organizations is ES.A.1.[11] Mr. Greenfield relies on the wrong standard to try to prove an employment relationship.

---

[10] 877 F.3d 1139 (9th Cir. 2017).

[11] Administrative Policy ES.A.1 (2020) states in pertinent part:

> The following exemptions are found in RCW 49.46.010(3). The MWA does not apply to employees covered by these exemptions. Application of these exemptions depends on the facts, which must be carefully evaluated on a case-by-case basis. . . .
>
> . . . .
>
> (d) **Volunteer work for an educational, charitable, religious, state or local governmental body or agency or non-profit organization.** Any volunteer engaged in the public service activities of the above type of organizations as long as there is no employer-employee relationship between the organization and the individual *or* the individual gives his or her services gratuitously to the organization.

11

No. 57156-1-II

CP at 90 (citation omitted). L&I also argued that Greenfield volunteered at the ACLU for "humanitarian and civic reasons," and took the position voluntarily; the ACLU did not coerce him into the internship. CP at 89.

The director affirmed the initial order. Greenfield petitioned for reconsideration, which the director denied. Greenfield then petitioned for judicial review under RCW 34.05.546.

In July 2022, the superior court held a hearing on Greenfield's appeal. During the hearing, Greenfield again argued that the "primary beneficiary" test in *Benjamin* applied to his circumstances. Specifically, he argued that L&I misinterpreted RCW 49.46.010(3)(d).

> [I]t's been misinterpreted because [L&I] claims[s] that the portion of the statute[,] . . . RCW 49.46.010(3)(d)[,] which has a phrase or clause, a subsection of the statute that exempts from the definition of employee for certain public agencies or nonprofits . . . basically that the definition of employee within that statute does not apply to nonprofits where the employer/employee relationship does not in fact exist or where labor is performed gratuitously for the organization. And so [L&I] interprets the first portion of that clause to mean there is a default position that the Minimum Wage Act . . . does not apply to nonprofit organizations.

1 Verbatim Rep. of Proc. (VRP) at 20-21.

L&I contended that Greenfield was a volunteer. L&I argued that any distinction between the labels "volunteer" and "intern" was immaterial:

> [M]ost people who take these internships at the ACLU are in school looking for academic credit or to see if they want to work at the ACLU, that's what the motivation is; whether they call it internship, or whether they call it a volunteer, whatever they call it, it doesn't matter. That's the purpose. . . . That Benjamin case only applies if you're looking at for-profit internships and then in a for-profit situation you would apply Benjamin. But here, this is at a nonprofit. That's why

Wash. Dep't of Lab. & Indus., Administrative Policy ES.A.1, at 3 (revised Dec. 29, 2020) (Minimum Wage Act Applicability), https://lni.wa.gov/workers-rights/_docs/esa1.pdf [https://perma.cc/S8C7-W5LR] (emphasis in original).

12

No. 57156-1-II

the [B]enjamin test doesn't apply is because we're looking specifically to nonprofit, and there's no cases out there where they're looking specifically at a nonprofit agency under Washington State law to see whether at a nonprofit, if you're volunteering your time, you're doing an internship for a nonprofit, there's no six-factor test such as Benjamin that would apply in that circumstance.

Instead, what we look at is [L&I's] policy interpreting what RCW 49.46.010 says. And [L&I] policy that we've also cited in the record that explains that what it means to render your services gratuitously because that's what we're trying to do here, interpret what the statute means. And, of course, then renders their services gratuitously where they're not pressured or coerced into volunteering and they're not employees.

1 VRP at 30-31.

The superior court affirmed L&I's decision. The superior court acknowledged that the use of the label "'intern'" was troubling, but the superior court likened Greenfield's case to *Rocha v. King County*,[12] where the Supreme Court addressed whether jurors were subject to the MWA. 1 VRP at 41. The superior court ruled that substantial evidence supported Greenfield's status as a volunteer and stated that RCW 49.46.010(3)(d) provides an "express exemption" to the MWA for volunteers. 1 VRP at 39.

Greenfield appeals.

ANALYSIS

Greenfield appeals the superior court's findings of fact, conclusions of law, and judgment affirming a Director's Order.[13] The Director's Order affirmed an Initial Order and Determination

---

[12] 195 Wn.2d 412, 424, 460 P.3d 624 (2020) (holding that jurors are not "entitled to minimum wage for the purposes of the MWA because no employer-employee relationships exists statutorily under RCW 49.46.010(3)(d) or otherwise.").

[13] In his brief, Greenfield lists over 20 assignments of error. Almost all of these assignments of error are addressed by the primary issue of whether Greenfield falls within an exemption in the MWA under RCW 49.46.010(3)(d). Greenfield also assigns error to the OAH proceedings when

13

No. 57156-1-II

of Compliance, which found Greenfield to be a volunteer under RCW 49.46.010(3)(d) and therefore exempt from the MWA.

Greenfield argues there is insufficient evidence to support the OAH's finding that Greenfield was a volunteer for the ACLU. Specifically, Greenfield asserts he did not perform services for the ACLU gratuitously because he "accepted the internship on the condition that it would eventually lead to full-time employment." Br. of Appellant at 4. L&I argues that substantial evidence shows that Greenfield performed services for the ACLU gratuitously; therefore, he was a volunteer and exempt from the MWA. We hold that the MWA exemption applies and that the ACLU did not violate the MWA by not paying Greenfield.

A.  STANDARD OF REVIEW

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of administrative agency decisions. RCW 49.48.084(4); RCW 34.05.570; *Providence Health & Servs.—Wash. v. Dep't of Health*, 194 Wn. App. 849, 856, 378 P.3d 249 (2016), *review denied*, 187 Wn.2d 1003 (2017). The challenger to the agency action bears the burden of proving the invalidity of an agency action. RCW 34.05.570(1)(a); *Providence Health & Servs.—Wash.*, 194 Wn. App. at 856.

---

the administrative law judge stated the scope of its review and jurisdiction was confined to RCW 49.48.084(3) and the Administrative Procedure Act (APA), chapter 34.05 RCW, and not based on Seattle municipal wage laws. However, Greenfield did not include any argument on Seattle wage laws in his briefing. We do not consider arguments a party fails to brief. *Sprague v. Spokane Valley Fire Dep't*, 189 Wn.2d 858, 876, 409 P.3d 160 (2018). Accordingly, we do not address Greenfield's assignment of error to the OAH's conclusion that RCW 49.48.084(3) and the APA apply to its scope of review and jurisdiction, not Seattle municipal wage laws.

No. 57156-1-II

We sit in the same position as the superior court when reviewing agency actions. *Kittitas County v. Kittitas County Conservation Coal.*, 176 Wn. App. 38, 47, 308 P.3d 745 (2013). Accordingly, we review "the administrative record rather than the superior court's findings or conclusions." *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 548, 389 P.3d 731, *review denied*, 188 Wn.2d 1009 (2017).

Reviewing courts may reverse an administrative order if the order is not supported by substantial evidence "when viewed in light of the whole record before the court." RCW 34.05.570(3)(e). Substantial evidence exists if there is "a sufficient quantity of evidence to persuade a fair-minded person of the order's truth or correctness." *Crosswhite*, 197 Wn. App. at 548. We may also grant relief from an agency decision if the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d). We review errors of law de novo. *Dep't of Revenue v. Nord Nw. Corp.*, 164 Wn. App. 215, 223, 264 P.3d 259 (2011), *review denied*, 173 Wn.2d 1019 (2012).

Questions of statutory interpretation are reviewed de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The objective of statutory interpretation is to carry out the legislature's intent. *Birgen v. Dep't of Lab. & Indus.*, 186 Wn. App. 851, 857, 347 P.3d 503, *review denied*, 184 Wn.2d 1012 (2015). Courts derive legislative intent from the plain meaning of a statute. *Id.* "If the statute's plain language is unambiguous, 'we give the words their common and ordinary meaning.'" *Royal Oaks Country Club v. Dep't of Revenue*, 25 Wn. App. 2d 468, 474, 523 P.3d 1198 (2023) (quoting *Tesoro Refin. & Mktg. Co. v. Dep't of Revenue*, 173 Wn.2d 551, 556, 269 P.3d 1013 (2012)). Courts may use dictionary definitions to discern the plain

15

No. 57156-1-II

meaning of terms undefined by statute. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395, 325 P.3d 904 (2014).

Generally, courts accord deference to agency interpretations of statutes when the statute falls within the agency's expertise. *Wash. State Dairy Fed'n v. Dep't of Ecology*, 18 Wn. App. 2d 259, 274, 490 P.3d 290 (2021). However, courts need not defer to an agency's interpretation of a statute when the language of the statute is unambiguous. *Royal Oaks Country Club*, 25 Wn. App. 2d at 474. Furthermore, "administrative policies do not even have the force of regulations, and deference to such policies is inappropriate because '[courts have] the ultimate authority to interpret a statute.'" *Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 624-25, 416 P.3d 1205 (2018) (quoting *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 716, 153 P.3d 846, *cert. denied*, 552 U.S. 1040 (2007)).

B.    MINIMUM WAGE ACT

1.    Legal Principles

Washington's Minimum Wage Act is patterned on the federal Fair Labor Standards Act (FLSA), 29 U.S.C §§ 201-219. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 869, 281 P.3d 289 (2012). Because the MWA is based on the FLSA, "courts 'may consider interpretations of comparable provisions of the [FLSA] as persuasive authority.'" *Kilgore v. Shriners Hosps. for Child.*, 190 Wn. App. 429, 435, 360 P.3d 55 (2015) (alteration in original) (quoting *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 524, 7 P.3d 807 (2000)). However, Washington courts are not bound by federal interpretations. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 298, 996 P.2d 582 (2000).

16

No. 57156-1-II

The MWA's purpose is to protect Washington workers and ensure "'every person whose employment contemplated compensation'" is paid a minimum wage. *Anfinson*, 174 Wn.2d at 870 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152, 67 S. Ct. 639, 641, 91 L. Ed. 809 (1947)). The MWA is remedial and liberally construed. *Port of Tacoma v. Sacks*, 19 Wn. App. 2d 295, 303, 495 P.3d 866 (2021). Accordingly, any exemptions from the MWA are narrowly construed; exemptions "apply only to situations that are plainly and unmistakably consistent with the terms and spirit of the legislation." *Rocha*, 195 Wn.2d, 421.

a.    Gratuitous services to nonprofit organizations

The MWA does not apply to nonprofit organizations when there is no employer-employee relationship or where an individual provides gratuitous services to the nonprofit organization. RCW 49.46.010(3)(d). Specifically, the MWA excludes

> [a]ny individual engaged in the activities of [a] . . . nonprofit organization where the employer-employee relationship does not in fact exist or where the services are rendered to such organizations gratuitously.

RCW 49.46.010(3)(d); *see Rocha*, 195 Wn.2d at 422 ("The statutory language in RCW 49.46.010(3)(d) provides that when no employer-employee relationship exists, the MWA does not apply.").

In its interpretation of RCW 49.46.010(3)(d), L&I relies on the Code of Federal Regulations[14] to identify individuals who provide gratuitous services as "volunteers" under its administrative policy:

---

[14] The C.F.R.'s define a "volunteer" as:

> An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of

17

No. 57156-1-II

> Individuals are considered volunteers only when their services are offered freely and without pressure or coercion, direct or implied, from an employer. Individuals who volunteer or donate their services, usually on a part-time or irregular basis, for public service or for humanitarian objectives, and are not acting as employees or expecting pay, are not generally considered employees of the entities for whom they perform their services.

Admin. Pol'y ES.A.1, at 3-4.[15]

### b.     Application of MWA to interns/trainees

The MWA is applicable to all Washington employees.   RCW 49.46.005(1).   An "employee" "includes any individual employed by an employer."   RCW 49.46.010(3); *Anfinson*, 174 Wn.2d at 867.   An "employer" is "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee."   RCW 49.46.010(4).   Under the MWA, to "employ" means "to permit to work."   RCW 49.46.010(2).   The definitions of "employee," "employer," and "employ" are virtually identical under the FLSA and MWA.   *See* RCW 49.46.010(2), (3), (4); *Anfinson*, 174 Wn.2d at 868; *see* 29 U.S.C. § 203(e)(1) ("'[E]mployee' means any individual employed by an employer."); 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly

---

> compensation for services rendered, is considered to be a volunteer during such hours. . . .

> . . . Individuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer.

29 C.F.R. § 553.101(a), (c) (2022).

[15] Wash. Dep't of Lab. & Indus., Admin. Pol'y ES.A.1, at 3-4 (rev. Dec. 29, 2020), https://www.lni.wa.gov/workers-rights/_docs/esa1.pdf [https://perma.cc/B6ZS-FWE9].

No. 57156-1-II

or indirectly in the interest of an employer in relation to an employee."); 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work.").

In Washington, courts generally consider the economic dependence test developed by the federal courts to assess whether an employer-employee relationship exists. *Anfinson*, 174 Wn.2d at 871. The key inquiry is whether "'as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself.'" *Id.* (quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)). However, if an express exemption applies, courts need not reach the economic dependence test. *Rocha*, 195 Wn.2d at 423.

In certain circumstances, an intern or trainee, "without promise or expectation of compensation," may work for their own advantage on the premises of another and are not considered employees. *Walling*, 330 U.S. at 152. In such cases, courts consider who is the primary beneficiary of the relationship when assessing whether an employer-employee relationship exists. *Id.* at 152-53. If the employer derives no immediate advantage from work done by trainees, the trainees are not employees. *Id.* at 153.

The MWA does not distinguish interns or trainees from employees. *See* RCW 49.46.010. However, because the FLSA and MWA definitions of "employ," "employee," and "employer" are nearly identical, federal case law may provide guidance to assess whether an intern is an employee under the MWA. *Kilgore*, 190 Wn. App. at 435.

Federal courts have adopted a seven-factor "primary beneficiary" test to determine whether interns are employees for the purposes of the FLSA. *Benjamin*, 877 F.3d at 1147-48. The non-exhaustive factors are:

19

No. 57156-1-II

"1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.

2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.

3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.

4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship."

*Id.* at 1146 (quoting *Glatt v. Fox Searchlight Pictures Inc*., 811 F.3d 528, 536-37 (2d Cir. 2015)).

2.     RCW 49.46.010(3)(d) Exemption to MWA

Greenfield argues that L&I misinterprets the employee exemption under RCW 49.46.010(3)(d).  Specifically, he asserts that L&I interprets the exemption as a "blanket exemption" for nonprofit organizations "from wage and employment law" unless "some kind of contract or explicit agreement" exists.  Br. of Appellant at 29.  Greenfield further asserts that he did not provide his services gratuitously; rather, he accepted the internship only because he understood it would transition to full-time employment with the ACLU.

The objective of statutory interpretation is to carry out the legislature's intent, and courts derive legislative intent from the plain meaning of a statute.  *Birgen*, 186 Wn. App. at 857.  RCW

20

No. 57156-1-II

49.46.010(3)(d) provides that the definition of "employee" excludes "[a]ny individual engaged in the activities of [a] . . . nonprofit organization where the employer-employee relationship does not in fact exist *or* where the services are rendered to such organizations gratuitously." (Emphasis added.) The disjunctive "or" indicates there are two ways an individual might fall within the exemption: either when an employer-employee relationship does not exist, which would require an economic-dependence test analysis as articulated in *Anfinson*, or an individual provides his or her services gratuitously. If one of the conditions is met, there is no need to address the other condition. *See Rocha*, 195 Wn.2d at 423. \

> a. Substantial evidence shows Greenfield provided gratuitous services to a nonprofit organization[16]

Here, there is no dispute that the ACLU is a nonprofit organization. The record shows that Greenfield provided gratuitous services to the ACLU. Thus, the exemption found in RCW 49.46.010(3)(d) applies, and the ACLU did not violate the MWA by not paying Greenfield.

The ACLU's intake counselor internship posting did not state that it was a paid position, nor was any salary listed for the position. When Greenfield interviewed for the position, he never asked whether he would be paid and the ACLU did not discuss compensation. Additionally, there

---

[16] The parties debate the term "volunteer" in their briefing. Greenfield argues that under *Benjamin*, there is no such thing as a "'volunteer intern.'" Br. of Appellant at 21. Conversely, L&I identifies Greenfield as exempt from the MWA based on his "volunteer" status. Greenfield's point is well taken in that RCW 49.46.010(3)(d) does not use the word "volunteer." Further, an employer's designation of an individual as a "volunteer" does not dictate whether an employer-employee relationship exists. *See Mitchell v. PEMCO Mut. Ins. Co.*, 134 Wn. App. 723, 730, 142 P.3d 623 (2006) ("'Employers asserting an exclusion have the burden of proving their employees fit plainly and unmistakably within its terms.'" (quoting *Tift v. Pro. Nursing Servs., Inc.*, 76 Wn. App. 577, 582, 886 P.2d 1158, *review denied*, 127 Wn.2d 1007 (1995), *review denied*, 160 Wn.2d 1016 (2007))). We review the statutory language of the MWA to determine the merits of the appeal.

No. 57156-1-II

is nothing in the record showing the ACLU guaranteed or promised a full-time position to Greenfield. During the internship, Greenfield did not fill out any employment forms, such as a W-4 or I-9, nor did he ask for such documents. Greenfield did not receive any paystubs or report his hours. Furthermore, Greenfield continually returned to the ACLU, despite never having received a paycheck and never having inquired as to the possibility of a paycheck, between March and December 2018. These facts show that Greenfield did not contemplate compensation from the internship position. *See Anfinson*, 174 Wn.2d at 870.

RCW 49.46.010 does not define "gratuitous." Courts may use dictionary definitions to discern the plain meaning of terms undefined by statute. *AllianceOne Receivables Mgmt., Inc.*, 180 Wn.2d at 395. "Gratuitous" means "given freely or without recompense **:** granted without pay." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 992 (2002). As discussed above, Greenfield provided his services as an intake counselor to the ACLU without pay, or any promise of future pay or a paid position, for 10 months. Merely informing the ACLU that he intended to work there full-time—which most people would construe as a hope rather than a belief of entitlement—even coupled with intermittent applications to paid positions, does not negate the fact that Greenfield provided services to the ACLU without pay.

In his briefing, Greenfield assumes that he did not give his services gratuitously; however, despite stating that an employment relationship is a "question of fact," he then neglects to examine his conduct beyond his own subjective beliefs. Br. of Appellant at 31. Instead, he asserts that because the FLSA has an employee exemption for specific kinds of nonprofit organizations, the "MWA is meant to consider" the same sort of "highly specific exemption." Br. of Appellant at 31. Greenfield points to 29 U.S.C. § 203(e)(5), which provides: "The term 'employee' does not

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57156-1-II

include individuals who volunteer their services solely for humanitarian purposes to private non-profit food banks and who receive from the food banks groceries."

However, the plain language of RCW 49.46.010(3)(d) does not support Greenfield's assertion. Washington courts are not bound by federal cases interpreting the FLSA, especially when the MWA departs from the FLSA. *See Carranza*, 190 Wn.2d at 620 n.5,. The MWA does not distinguish between individuals working at specific kinds of nonprofit organizations as exempt, let alone the reasons why a person may perform gratuitous services for a nonprofit organization. *See* RCW 49.46.010(3)(d). Rather, the MWA broadly states: "[a]ny individual engaged in the activities of [a] . . . nonprofit organization." RCW 49.46.010(3)(d).

Because Greenfield performed services for the ACLU, a nonprofit organization, without pay, promise of pay, or promise of future employment, we hold that Greenfield rendered services gratuitously. Therefore, Greenfield falls within the employment exemption under RCW 49.46.010(3)(d).

        b.      No employment relationship exists

Greenfield also argues that the appropriate test to determine his employment status is the seven-factor "primary beneficiary" test laid out in *Benjamin*. Specifically, Greenfield asserts that "virtually all of these factors [of the primary beneficiary test] are unfavorable" to the ACLU. Br. of Appellant at 40. L&I argues that Greenfield's reliance on *Benjamin* is misplaced because the FLSA does not contain a comparable provision to RCW 49.46.010(3)(d) and there are more recent federal decisions than *Benjamin* that better capture the employer-employee relationship.

Because Greenfield rendered his services gratuitously, we do not determine whether an employment relationship existed between Greenfield and the ACLU. RCW 49.46.010(3)(d);

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57156-1-II

*Rocha*, 195 Wn.2d at 423. However, even assuming Greenfield did not provide services gratuitously, his claim of an employment relationship still fails under both *Anfinson* and *Benjamin*.

Here, applying the key inquiry of *Anfinson's* economic-dependence test—that is, whether, as a matter of economic reality, a worker is economically dependent upon an alleged employer— Greenfield was never economically dependent on the ACLU. He was never paid by the ACLU, never promised a paycheck, and presumably could rely on other sources of income because he continued to show up at the ACLU between March and December 2018. Furthermore, the intake counselor position was always temporary. The internship posting listed a commitment of six months, and even though Greenfield continued with the position past six months, there was no pretense that the position constituted permanent employment. Because the record shows that Greenfield was not economically dependent upon the ACLU, he is not an employee under *Anfinson*.

The *Benjamin* primary beneficiary test yields the same result. That test assesses the economic realities in a student-employee context and whether a student or intern should be considered an employee. *Benjamin*, 877 F.3d at 1147-48.

L&I argues that the *Benjamin* primary beneficiary test is outdated in light of more recent cases such as *Dawson v. Nat'l Collegiate Athletic Ass'n*.[17] However, *Dawson* examined a putative employee-employer relationship in a student athlete context and is not applicable here. *See*, 932 F.3d at 907. While Greenfield was not a student intern, students often filled the ACLU internships,

---

[17] 932 F.3d 905 (9th Cir. 2019).

No. 57156-1-II

and in many cases, students would receive academic credit. Therefore, *Benjamin* is more analogous to the circumstances of the current case.[18]

Here, the *Benjamin* factors cut in favor of the ACLU. First, despite Greenfield's insistence otherwise, he appeared to have understood there was no expectation of compensation because he continued to participate in the internship for 10 months without pay and without raising any question about compensation. While he argues that he expected compensation in the form of a fulltime, paid position at the completion of his internship, there is nothing in the record to show that the ACLU ever expressly or impliedly promised Greenfield compensation or a paid position.

Second, Greenfield received intake counselor training and regularly attended seminars for interns. Arguably, those seminars mirrored an educational setting as they were for the interns' benefit, not regular staff.

The third and fourth factors do not apply because Greenfield was not a student. However, the fifth factor favors the ACLU because the intake counselor internship was a temporary position.

As to the sixth factor, the ACLU did not displace any paid employees with intake counselor interns. None of the intake counselors were paid. Indeed, when no intake counselors were available, the entire intake line would shut down.

---

[18] L&I contends that *Benjamin* only applies to for-profit organizations based on the language of RCW 49.46.010(3)(d). According to L&I, any individual working without pay for a nonprofit is always a volunteer, exempt from the MWA, absent an explicit employment agreement. While we need not address this assertion, we note that nothing in the plain language of RCW 49.46.010(3)(d) precludes application of *Benjamin* to a nonprofit organization and there may be circumstances where an individual providing services to a nonprofit, such as a student-intern, is not properly designated as one who provides services gratuitously.

No. 57156-1-II

Finally, while working as an intake counselor and after, Greenfield continued to apply to paid positions. Greenfield's continued efforts in applying for paid positions contradicts his assertion that he believed he was entitled to a fulltime position on completion of his internship. Accordingly, the *Benjamin* factors establish that Greenfield was not an employee.

CONCLUSION

Because Greenfield performed services for the ACLU, a nonprofit organization, without pay, promise of pay, or promise of future employment, Greenfield rendered services gratuitously. That alone supports the conclusion that the employment exemption under RCW 49.46.010(3)(d) applies and the ACLU did not violate the MWA. But the record also shows that Greenfield was not an employee of the ACLU. We hold that the employment exemption under RCW 49.46.010(3)(d) applies, and the ACLU did not violate the MWA. Accordingly, we affirm.

Lee, J.

We concur:

Cruser, A.C.J.

Veljacic, J.